BK CT

**Entered on Docket**
**July 19, 2005**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

# FILED

**JUL 08 2005**

NOT FOR PUBLICATION

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NC-04-1452-PBS |
| | NC-04-1453-PBS |
| RALBERT RALLINGTON | (related appeals) |
| BROOKS-HAMILTON, | |
| | Bk. No.   03-44829 |
| Debtor. | |
| | Adv. No. 03-04837 |
| DAVID A. SMYTH, | |
| Appellant, | |
| v. | MEMORANDUM[1] |
| CITY OF OAKLAND, | |
| Appellee. | |

Argued and Submitted on
May 19, 2005 at San Jose, California

Filed - July 8, 2005

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Leslie Tchaikovsky, Bankruptcy Judge, Presiding

Before: PERRIS, BRANDT, and SMITH, Bankruptcy Judges.

---

[1]    This disposition is not appropriate for publication and
may not be cited to or by the courts of this circuit except when
relevant under the doctrines of law of the case, res judicata, or
collateral estoppel.  See 9th Cir. BAP Rule 8013-1.

In these two appeals, the lawyer for a bankruptcy debtor appeals separate orders that imposed monetary sanctions on him for violation of Fed. R. Bankr. P. 9011 and prohibited him from practicing before the bankruptcy court in the Northern District of California for six months. Because the facts underlying both orders are the same, we will discuss both appeals in one Memorandum. For the reasons set out below, we AFFIRM in both appeals.

FACTS

Between 1996 and 1998, debtor Ralbert Rallington Brooks-Hamilton (debtor) borrowed a total of $500,000 from the City of Oakland (the city) under a federal program relating to economic enterprise zones, secured by some personal property and deeds of trust on two parcels of debtor's real property. Debtor defaulted on the loans. In early 2001, the city brought an action against debtor in state court seeking possession of certain personal property collateral. It also began nonjudicial foreclosure proceedings against debtor's real property that secured the loans.

In July 2002, the city sought from the state court a writ of possession of the personal property (the state court action). The state court entered an order authorizing issuance of the writ, but the city never enforced the writ by taking possession of the personal property.

Debtor filed a cross-complaint in the state court action, alleging, among other claims, a claim for breach of contract. The cross-claims, including the claim for breach of contract, were dismissed twice with leave to amend.

2

At this point, appellant David Smyth (Smyth) began representing debtor. Smyth filed a second amended cross-complaint on debtor's behalf, alleging breach of contract and racial discrimination. In May 2003, the state court dismissed the cross-complaint without leave to amend. The state court complaint was dismissed on the city's motion on August 29, 2003.

In the meantime, in late 2001, debtor filed a complaint against the city in federal district court, alleging various causes of action relating to the loans (the federal district court action). After debtor amended his complaint twice, the district court in May 2002 dismissed the action for lack of subject matter jurisdiction.

Debtor, represented by Smyth, filed this chapter 13[2] bankruptcy case in August 2003. His schedules listed the city as an undisputed secured creditor, holding a claim in an amount much less than what the city claims is owed. Debtor's chapter 13 plan provided that the city's claim would be paid by April 1, 2004, through a sale or refinance of debtor's real property. The city did not object to the plan, which was confirmed.

Thereafter, Smyth filed on behalf of debtor a complaint against the city, seeking a declaration that the city's liens on debtor's property are void and that debtor does not owe the city any money.

The city moved to dismiss the adversary complaint, arguing that the claims were barred by res judicata and collateral estoppel.

---

[2]     Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

3

Because, by the time the motion to dismiss was heard, it was apparent that debtor's bankruptcy case was either going to be dismissed or converted, the bankruptcy court declined to address the preclusion arguments, instead dismissing the adversary proceeding without prejudice.

In the meantime, the city filed a proof of claim in debtor's bankruptcy case, asserting a secured claim of $983,146.51. Smyth filed an objection to the claim, asserting that the secured claim could not be paid through the confirmed plan because the plan did not provide for payment of any secured claims, and it could not be paid as unsecured because the city had not filed an unsecured claim.

The court did not rule on the claim objection, concluding in the adversary proceeding that it would abstain from deciding the issues raised regarding the city's claim.

Because of debtor's counsel's frivolous arguments in connection with the city's claim, the court issued an order to show cause in the bankruptcy case why the case should not be dismissed and why Smyth should not be sanctioned for violating Rule 9011. The city filed a motion for sanctions under Rule 9011 against both debtor and Smyth, as well as a motion to convert the case to chapter 7 rather than have it dismissed.

The bankruptcy court ordered the case converted to chapter 7. After a hearing on the city's motion for sanctions and the court's order to show cause, the court issued thorough, well-reasoned memoranda explaining its decision to grant both motions. On the city's motion, the court sanctioned Smyth $10,671 for violating Rule

4

9011 in the adversary proceeding, which represented the costs the city incurred in connection with the adversary proceeding. The court stayed the payment of the sanctions for one year, based on its ruling on the show cause order that Smyth should be prohibited from practicing law before the court for six months. The court denied the motion for sanctions against debtor. Smyth's appeal of that order is BAP No. NC-04-1452.

On the order to show cause, the court found that Smyth had violated Rule 9011 by making frivolous arguments in connection with debtor's objection to the city's claim. The court ordered Smyth suspended from practicing law before the bankruptcy court for the Northern District of California for six months, except that Smyth could continue to appear in cases in which he was already the attorney of record. Smyth's appeal of that order is BAP No. NC-04-1453. The bankruptcy court stayed the order until this appeal is decided.

ISSUES

APPEAL NO. 04-1452

Whether the bankruptcy court abused its discretion in imposing monetary sanctions under Rule 9011.

APPEAL NO. 04-1453

Whether the bankruptcy court abused its discretion in suspending Smyth from practicing law before the court for violation of Rule 9011.

5

We review all aspects of a decision to impose Rule 9011 sanctions for abuse of discretion. <u>In re Grantham Bros.</u>, 922 F.2d 1438, 1441 (9th Cir. 1991). A court abuses its discretion "if it base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 405 (1990).

## DISCUSSION

In both orders that are on appeal, the bankruptcy court imposed sanctions under Rule 9011. Rule 9011 "imposes on attorneys, and also on unrepresented parties, the obligation to insure that all submissions to a bankruptcy court are truthful and for proper litigation purposes." <u>In re DeVille</u>, 361 F.3d 539, 543 (9th Cir. 2004). As relevant to these appeals, the rule provides:

> (b) By presenting to the court . . . a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances --
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]
>
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]

The standard against which an attorney's conduct is measured "is a competent attorney admitted to practice before the [pertinent] court." <u>Zaldivar v. City of Los Angeles</u>, 780 F.2d 823, 830 (9th Cir. 1986), <u>overruled on other grounds by Cooter & Gell v. Hartmarx</u>

6

1 <u>Corp.</u>, 496 U.S. 384 (1990).

2   A motion for sanctions may be brought by a party or on the

3 court's own motion.  Rule 9011(c)(1)(A), (B).[3]  If the court

4 determines after notice and a hearing that a person has violated

5 Rule 9011(b), it may impose sanctions, which "shall be limited to

6 what is sufficient to deter repetition of such conduct or comparable

7 conduct by others similarly situated."  Rule 9011(c)(2).

8

9                        BAP NO. NC-04-1452

10

11   Smyth argues that the court erred in awarding monetary

12 sanctions on the city's motion in the adversary proceeding, which

13 was based on the court's determination that the claims asserted in

14 the adversary complaint were frivolous as they were all barred by

15 collateral estoppel or res judicata, and that the one-action rule

16 claim was also substantively frivolous.  The court further held that

17 the claims were filed for an improper purpose.

18   The bankruptcy court rejected Smyth's four arguments: (1) that

19 the fact that the court had abstained from deciding the claims

20 asserted in the adversary proceeding, rather than deciding them on

21 the merits, precluded the court from awarding sanctions for a

22

23   ───────────────

       [3]   The rule contains a safe harbor, so that a motion for
24 sanctions may not be filed unless, within 21 days of service of the
   motion on the offending person, the challenged pleading or document
25 is not withdrawn or corrected.  Rule 9011(c)(1)(A).  The city served
   Smyth with its motion for sanctions more than 21 days before it
26 filed the motion with the court, and Smyth failed to withdraw or
   correct the complaint.

                                  7

1 frivolous complaint; (2) that the claims were not barred by
2 preclusion doctrines; (3) that the claims were not asserted for an
3 improper purpose; and (4) that the monetary sanction requested by
4 the city was excessive.  Smyth raises numerous arguments on appeal,
5 which can be put into various categories.

6 1.    Sanctions for filing pleading that was not dismissed on the
7       merits

8       Smyth argues that the court should not have sanctioned him for
9 filing the adversary complaint, because the court did not dismiss
10 that complaint on the merits, but instead abstained and dismissed it
11 without prejudice.

12      The bankruptcy court did dismiss the complaint without
13 prejudice, saying that the court would abstain from deciding issues
14 relating to debtor's objections to the city's claims.  However, the
15 court then decided, on the city's motion for sanctions, that the
16 claims asserted in the adversary proceeding were frivolous.

17      Rule 9011 prohibits an attorney from signing and filing
18 pleadings that are without legal support.  Nothing in the rule
19 requires that the claims asserted in the pleading be dismissed on
20 the merits before sanctions can be imposed.  Smyth does not provide
21 any authority for the proposition that a court cannot, in the
22 context of a motion for sanctions, decide whether a pleading
23 violates Rule 9011 because it is legally frivolous.[4]  In fact,

24

25      [4]    The only case he cites in support of this argument is
26 Jureczki v. City of Seabrook, Tex., 668 F.2d 851 (5th Cir. 1982),
which says that a court does not reach the merits of the case when
it abstains.  The case has nothing to do with a motion for
sanctions.

8

subsection (b)(2) of the rule requires just such a determination. Therefore, the court could impose sanctions for violation of Rule 9011, even though it had dismissed the complaint without prejudice.

In his reply brief, Smyth argues for the first time that the sanctions order was in effect an improper alteration of the original abstention and dismissal without prejudice. We will not consider an argument that was not raised in the bankruptcy court and not raised on appeal until the reply brief. U.S. v. Bigman, 906 F.2d 392, 395 (9th Cir. 1990)(appellate court will not consider issue raised for the first time on appeal); In re N. Cal. Homes and Gardens, Inc., 92 B.R. 410, 413-14 (9th Cir. BAP 1988)(same); In re Baldwin, 70 B.R. 612, 617 (9th Cir. BAP 1987)(raising issues for first time in reply brief disfavored).

## 2.   Preclusive effect of prior actions

Debtor had filed two different actions making claims against the city before Smyth filed this adversary proceeding on his behalf in the bankruptcy case. We will consider the preclusive effect of each prior action separately.

### A.   Federal district court action

The adversary complaint in this case alleges that the trust deeds executed in connection with the loans made by the city to debtor are illegal and void because, among other reasons, they violated federal law (the regulations of Housing and Urban Development (HUD), under which the loans were made). In the earlier federal district court action, debtor had alleged various state law claims, including a claim that the city had negligently administered

9

federal funds.[5]  The district court dismissed the complaint, finding
that there is no private right of action arising out of alleged
violations of the HUD regulations, and thus no federal question
jurisdiction.

    The bankruptcy court concluded that the dismissal of the
district court action for lack of jurisdiction precluded debtor from
seeking a determination in this adversary proceeding that the city
had violated the HUD rules with regard to its loans to debtor, based
on collateral estoppel or issue preclusion.

    The bankruptcy court correctly explained that a federal court's
dismissal of a complaint for lack of subject matter jurisdiction has
"collateral estoppel effect with respect to the issue upon which the
dismissal was based[,]" citing Okoro v. Bohman, 164 F.3d 1059, 1062-
63 (7th Cir. 1999).  Thus, because the district court had dismissed
debtor's claims against the city on the ground that there was no
private right of action for violation of HUD regulations, debtor was
precluded from relitigating that issue in the adversary proceeding.
Memorandum of Decision re Motion for Rule 9011 Sanctions at 12-13.
The court rejected Smyth's argument that the principle does not
apply when the second action is one for declaratory judgment.
According to Smyth, the adversary complaint is really a request for
declaratory relief.

---

    [5]    The district court complaint also alleged breach of
contract, intentional interference with prospective economic
advantage, negligent interference with prospective economic
advantage, intentional infliction of emotional distress, and fraud,
misrepresentation and deceit.

Case: 03-04837   Doc# 43   Filed: 07/08/05   Entered: 07/19/05 14:17:02   Page 10 of
39

On appeal, Smyth raises a different argument, that there is no bar to asserting violation of federal regulations as a basis for invalidating the trust deeds under state law.  Because he failed to make that argument to the bankruptcy court, we will not consider it on appeal.

### B.  State court action

The city argues that the claims in this adversary proceeding, which arise out of the same transactions as the cross-claims that were dismissed without leave to amend in the state court action, were frivolous, because they are barred by doctrine of res judicata. The bankruptcy court agreed.

The preclusive effect of a state court judgment in a subsequent federal action is determined by the law of the state in which the judgment was entered.  In re Nourbakhsh, 67 F.3d 798, 800 (9th Cir. 1995).  Under California law, res judicata bars relitigation not only of issues that were determined, but also of issues that could have been determined in the prior action.  See Lunsford v. Kosanke, 295 P.2d 432, 435 (Cal. Ct. App. 1956).  Res judicata applies when:

> (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.

Brinton v. Bankers Pension Serv., Inc., 90 Cal. Rptr. 2d 469, 472 (Cal. Ct. App. 1999).

Smyth raises various arguments challenging the bankruptcy court's conclusion that the claims asserted in the adversary complaint are barred by res judicata, based on the dismissal of

Case: 03-04837   Doc# 43   Filed: 07/08/05   Entered: 07/19/05 14:17:02   Page 11 of 39

1   debtor's cross-claims in state court.

2         (i)   <u>Final judgment</u>

3      First, Smyth argues that the state court's dismissal of the

4 cross-complaint without leave to amend was not a final judgment,

5 because it did not dispose of the claims asserted in the city's

6 complaint against debtor. Relying on <u>Lemaire v. All City Employees</u>

7 <u>Ass'n</u>, 110 Cal. Rptr. 507 (Cal. Ct. App. 1973), he asserts that,

8 because the claims of the city against debtor and the claims of

9 debtor against the city concerned the same financial transactions,

10 dismissal of the cross-claims was not a final judgment.

11      Smyth did not raise this precise argument to the bankruptcy

12 court. Nonetheless, Smyth is incorrect. As the bankruptcy court

13 noted,

14      [u]nder California law, an order sustaining a demurrer without
      leave to amend is considered a judgment on the merits, with res

15      judicata effect, as long as the order was based on the merits
      (or lack thereof) of the claims asserted and not on some formal

16      defect. <u>See</u> <u>Goddard v. Security Ins. And Guar. Co.</u>, 14 Cal. 2d
      47, 52 (1939); <u>Pollock v. University of Southern California</u>,

17      112 Cal. App. 4th 1416 (2003).

18 Memorandum of Decision re Motion for Rule 9011 Sanctions at 15:16-

19 22.

20      In <u>Lemaire</u>, the defendants filed cross-claims against

21 plaintiffs, based on the same transactions that formed the basis for

22 the plaintiffs' complaint. The court sustained a demurrer to the

23 defendants' cross-claims, and defendants appealed. The court held

24 that the order sustaining the demurrer to the cross-complaint was

25 not a final, appealable order, because the complaint was still

26 pending and had not been adjudicated. Under California's one-

12

1 judgment rule, dismissal of the cross-claims was interlocutory
2 pending the entry of judgment on the complaint.

3     That case is distinguishable from this one.  Here, the state
4 court action is no longer pending, having been dismissed at the
5 city's request.  That dismissal, which was not appealed, leaves
6 nothing pending in the court.  Therefore, the state court action has
7 been finally concluded, rendering the dismissal of the cross-
8 complaint final.

9              (ii) <u>Same cause of action</u>

10     Next, Smyth argues that he could not have raised the one-action
11 rule sanction claim in the second amended cross-complaint in state
12 court, because the sanction argument did not exist at the time of
13 the state court lawsuit.

14     California's one-action rule "requires a secured creditor to
15 proceed against its security before enforcing the underlying debt."
16 <u>In re Prestige Ltd. P'ship-Concord</u>, 205 B.R. 427, 434 (Bankr. N.D.
17 Cal. 1997), <u>aff'd</u>, 164 F.3d 1214 (9th Cir. 1999).  The rule may be
18 raised as a defense to an action on the obligation, to force the
19 creditor to exhaust the security before obtaining a money judgment,
20 or it may be asserted later as a sanction of waiver of the security.
21 <u>Walker v. Cmty. Bank</u>, 518 P.2d 329, 332 (Cal. 1974).

22     Whether or not Smyth is correct that a debtor may wait to raise
23 the sanction aspect of the one-action rule until after the creditor
24 obtains a money judgment against the debtor, the factual basis for
25 the one-action rule in this case shows that the city never obtained
26 a judgment against debtor.  The adversary complaint alleges that the

13

city lost its liens on debtor's real property "because on July 22, 2002 the City of Oakland obtained an Order for writ of Possession in the Superior Court of the State of California, . . . for the personal property, secured by the 6/26/97 Deed of Trust . . . ." Complaint to Determine the Validity, Priority of Liens at ¶ 11. It was the order, issued on July 22, 2002, that was alleged to trigger application of the one-action rule. Debtor filed his second amended cross-complaint on January 17, 2003, well after the state court order for the writ of possession was entered. Thus, the basis for the alleged one-action rule violation existed at the time of the second amended cross-complaint in the state court action and could have been raised at that time. It is therefore barred from being raised in the adversary complaint.

### (iii) Claims as offsets

Smyth next argues that, even if the state court dismissal of the cross-claims was final for purposes of res judicata, the claims may have been dismissed based on statute of limitations rather than for failure to state a claim, and therefore are not barred from being asserted as offsets to the city's claims.

The bankruptcy court disagreed with Smyth's view of the basis for dismissal of the state court action, finding that the state court had sustained the demurrer to debtor's second amended cross-complaint because it failed to state a claim. Memorandum of Decision re Motion for Rule 9011 Sanctions at 16:3-7.

The bankruptcy court was correct that the state court sustained the demurrer without leave to amend "for failure to state a claim."

14

1  Order Sustaining Demurrer.  However, the city's demurrer to the

2  second amended cross-complaint sought dismissal for failure to state

3  a claim based not only on the substance of the allegations, but also

4  on the statute of limitations.  Under California law, "[w]here a

5  complaint shows on its face that the action is barred by the statute

6  of limitations, a general demurrer for failure to state a cause of

7  action will lie."  Kendrick v. City of Eureka, 98 Cal. Rptr. 2d 153,

8  155 (Cal. Ct. App. 2000).  Thus, Smyth is correct that the court may

9  have sustained the demurrer on statute of limitations grounds.

10      Even so, that does not assist Smyth.  He argues that claims

11  that are barred by the statute of limitations may nonetheless be

12  used as offsets against a claim made by the same party.  See Styne

13  v. Stevens, 109 Cal. Rptr. 2d 14 (Cal. 2001)(defenses not barred by

14  statute of limitations, even though claims asserted on same basis

15  would be barred).  Whether or not debtor can raise time-barred

16  claims as offsets to any claims the city may bring, that is not what

17  happened here.  The adversary complaint Smyth filed in bankruptcy

18  court asserted claims in support of his theory that the lien of the

19  city is void.  The claims were not asserted in defense to the city's

20  claim.

21      (iv) Dismissal for inept pleadings

22      Smyth next argues that the dismissal of the state court cross-

23  claims are not preclusive, because the city failed to present

24  sufficient portions of the state court's record to show that the

25  cross-claims were not dismissed based solely on technical or formal

26  defects.  He cites Goddard v. Sec. Title Ins. and Guar. Co., 92 P.2d

15

804, 806 (Cal. 1939), which says that "a judgment based upon the sustaining of a special demurrer for technical or formal defects is clearly not on the merits and is not a bar to the filing of a new action."

This argument fails. In California, a general demurrer is one that challenges the pleading for failure to "state facts sufficient to constitute a cause of action." Cal. Code Civ. Pro. § 430.10(e); Hon. Eileen C. Moore and Michael Paul Thomas, <u>California Civil Practice</u> § 9:4 (2004)(general demurrer is one based on ground set out in Cal. Code Civ. Pro. § 430.10(e), including statute of limitations; demurrer based on any other grounds set out in § 430.10 is special demurrer). The city's demurrer to the second amended cross-complaint in state court was based on failure to state a claim, and therefore was a general demurrer. The court's dismissal of the cross-complaint thus was not based on a special demurrer for technical or formal defects.

(v) <u>Declaratory judgment</u>

Finally, with regard to the preclusive effect of the state court dismissal, Smyth argues that this adversary proceeding is not barred by the dismissal of the earlier action, because it is a request for declaratory judgment, not an action for damages. He asserts that, because the status of the loans has never been determined, the adversary complaint was not barred.

First, the adversary complaint in this case is not a declaratory judgment complaint; it seeks a determination that debtor owes no money to the city and that the city has no valid liens on

16

1   any of debtor's property.  This is a request for affirmative relief,
2   avoiding the liens and extinguishing the debt.

3        Even if this were a declaratory judgment action, Smyth's
4   argument fails.  Although a judgment on a declaratory judgment
5   action is "binding as to matters declared," but not as to matters
6   that were not presented for decision, 40 Cal. Jur. 3d <u>Judgments</u>
7   § 125 (2004), the earlier state court action was not an action for
8   declaratory judgment; it was a claim for damages based on the same
9   conduct that Smyth alleged in this adversary complaint.  Thus, the
10  concept that a prior declaratory judgment does not bar a later
11  action on claims arising out of the same facts does not apply here,
12  where the prior cross-complaint was not one for declaratory
13  judgment.

14  3.   <u>Validity of four interim liens</u>

15       Smyth argues that the adversary complaint was not frivolous,
16  because the status of four interim liens asserted by the city has
17  never been, and still needs to be, determined.  He does not explain,
18  however, why the bankruptcy court was wrong in concluding that his
19  claims for invalidating those liens are barred by claim preclusion
20  because they are part of the same cause of action as the claims
21  relating to the other three liens.  The mere fact that he still
22  wants a determination with regard to those interim liens does not
23  provide a basis for ignoring the doctrine of claim preclusion.

24       Smyth quotes the bankruptcy court's statement in the Memorandum
25  of Decision that "if the amounts secured by the Interim Loan Liens
26  have been repaid and the city is unwilling to release them

                                   17

voluntarily, the debtor may seek judicial assistance to compel their releases." Appellant's Opening Brief at 20 (quoting Memorandum of Decision re Motion for Rule 9011 Sanctions at 22:11 n.10). He then argues that he was simply seeking through the adversary proceeding to obtain such a determination.

This is a complete distortion of the adversary complaint. That complaint sought a determination that the liens were invalid as a result of violations of federal law, breaches of contract, and the one action rule. The interim liens arose out of the same transaction as the other liens at issue in the adversary proceeding. There was no allegation in the complaint that the interim loans had been repaid or that the city was unwilling to release the liens voluntarily; the claims were based solely on the city's alleged misconduct, the same alleged misconduct that debtor asserted invalidated the city's other liens. The bankruptcy court did not err in concluding that the claims asserted regarding the four interim liens were barred by claim preclusion for the same reasons that the claims regarding the other three liens were barred.[6]

Smyth also challenges the bankruptcy court's determination that the one-action rule claim was substantively frivolous. Because we conclude that the one-action rule claim was barred by claim

---

[6] The parties dispute whether the bankruptcy court found that the arguments relating to the four interim loans were frivolous. The court found that it should have been obvious to Smyth that the claims were barred by claim preclusion. It was for that reason that the court concluded that the claims relating to the interim liens were frivolous. Memorandum of Decision re Rule 9011 Sanctions at 17:17-23. It did not address whether the claims were frivolous for any other reason.

18

preclusion and that this should have been obvious to a competent attorney, we will not address whether the claim was also substantively frivolous.

4.    Imposition of sanctions

        A.    Scintilla of support

        Smyth argues that a court should not impose sanctions under Rule 9011 if there is even a scintilla of support for the pleading. The cases he cites for that proposition are irrelevant to the bankruptcy court's order in this case, which was based on the lack of legal support for the claims.   In In re Coastal Group, Inc., 100 B.R. 177, 179 (Bankr. D. Del. 1989), the court concluded that there was no willful violation of the automatic stay where there was "a scintilla of a suggestion" in the case law that the action taken by the party did not violate the stay.   This statement has nothing to do with Rule 9011 or Fed. R. Civ. P. 11, on which it Rule 9011 is based.

        Smyth also cites O'Brien v. Alexander, 101 F.3d 1479 (2d Cir. 1996).   In that case, the circuit court noted that sanctions under Fed. R. Civ. P. 11 "may not be imposed unless a particular allegation is utterly lacking in support."   Id. at 1489.   The court there was dealing with factual allegations, not legal arguments. Therefore, the case is inapposite.

        In this circuit, the rule is that sanctions may be imposed under Fed. R. Civ. P. 11, and therefore by extension under Rule 9011, for the filing of a frivolous claim, even if other claims asserted in the pleading are not frivolous.   Townsend v. Holman

Case: 03-04837    Doc# 43    Filed: 07/08/05    Entered: 07/19/05 14:17:02    Page 19 of
39

Consulting Corp., 929 F.2d 1358, 1363 (9th Cir. 1991). Thus, the bankruptcy court did not err in awarding sanctions if one of the claims presented by Smyth was without arguable merit.

In considering sanctions under Rule 9011, the court measures the attorney's conduct "objectively against a reasonableness standard, which consists of a competent attorney admitted to practice before the involved court." In re Grantham Bros., 922 F.2d 1438, 1441 (9th Cir. 1991). Reasonable inquiry "requires a party to consider 'whether any *obvious* affirmative defenses bar the case.'" F.D.I.C. v. Calhoun, 34 F.3d 1291, 1299 (5th Cir. 1994)(quoting White v. Gen'l Motors Corp., 908 F.2d 675, 682 (10th Cir. 1990))(emphasis supplied by Fifth Circuit). Under that standard, the question is not whether there was a scintilla of support for the pleading, but whether it was objectively reasonable for Smyth to assert the legal position, particularly in light of the two earlier cases between these two parties concerning the same loans. Therefore, even if there was a scintilla of support for the adversary complaint, that does not make the argument objectively reasonable, and the bankruptcy court did not err in awarding sanctions in this case.


B.   Consideration of prior conduct in imposing sanction

Smyth argues that the court erred in considering prior misconduct in imposing the sanction in this case. He relies on Christian v. Mattel, Inc., 286 F.3d 1118 (9th Cir. 2002). In that case, the circuit court reversed a district court's imposition of

20

sanctions under Fed. R. Civ. P. 11, where the court had imposed sanctions not only for signing and filing frivolous pleadings, but also because of counsel's conduct in the case and in related litigation. Because sanctionable behavior under Fed. R. Civ. P. 11 relates to papers signed in violation of the rule, the district court had erred in considering other behavior in deciding whether to sanction counsel.

The bankruptcy court in this case did not decide to award sanctions based on counsel's conduct in prior cases. The decision regarding whether to award sanctions was based solely on the pleadings signed and filed by counsel in this case. Thus, <u>Christian</u> is not applicable here.

The bankruptcy court did take into consideration counsel's prior conduct in other cases in determining what sanction would be appropriate to deter him from further frivolous pleadings. The court said:

> This is not the first time Smyth has been sanctioned. As he conceded in his papers, many years ago, he was the object of a malpractice judgment. Thereafter, over ten years ago, the three bankruptcy judges in the Oakland division, based on their observations of his incompetence and unprofessional conduct, advised Smyth that he would not be appointed to represent chapter 11 debtors.

> Still more recently, in In re Kellander, Case No. 99-17645, Smyth was sanctioned $6,000 for filing a frivolous motion to avoid a judgment lien for child support despite the statutory exclusion of such liens from avoidance. The sanction was imposed by the Honorable James Grube of the San Jose division, after the judge assigned to the case, the Honorable Randall Newsome, recused himself. Judge Grube also required Smyth to complete 40 hours of continuing legal education in the field of consumer bankruptcy law and legal ethics. . . .

> Clearly, Judge Grube's sanction was insufficient to deter Smyth's continued unprofessional conduct. Thus, it is not

21

excessive to impose a monetary sanction of $10,671 for his conduct in connection with the Adversary Proceeding. While Rule 9011(b) is not intended as a justification for "wholesale fee shifting," requiring the offending attorney to pay the attorneys' fees of the party harmed is permissible under appropriate circumstances. The Court finds the circumstances here to be appropriate and that this amount is the least that would serve the deterrence purpose of the rule. See Zambrano v. City of Tustin, 885 F.2d 1473, 1480 (9th Cir. 1989).

Memorandum of Decision re Motion for Rule 9011 Sanctions at 23:24 - 25:2.

The bankruptcy court has broad discretion in deciding what sanction to impose for violation of Rule 9011. In re DeVille, 361 F.3d 539, 553 (9th Cir. 2004). The principal goal of Rule 9011 "is to deter baseless filings . . . ." See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990)(discussing Fed. R. Civ. P. 11). Rule 9011 was amended in 1997 to conform to the 1993 changes to Fed. R. Civ. P. 11, and interpretations of Fed. R. Civ. P. 11 are helpful to interpretation of Rule 9011. DeVille, 361 F.3d at 552. The Advisory Committee Note to Rule 11 clearly supports the court's consideration of Smyth's earlier conduct in determining what sanction was appropriate to deter him from further frivolous filings: it lists consideration of "whether the person has engaged in similar conduct in other litigation" as relevant to what sanction is appropriate. Advisory Committee Note to Rule 11.[7]

----

[7]    The Note provides:

Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure;
(continued...)

22

Case: 03-04837    Doc# 43    Filed: 07/08/05    Entered: 07/19/05 14:17:02    Page 22 of 39

1       Thus, the bankruptcy court did not err in considering Smyth's

2  prior conduct in other cases in determining what sanction was needed

3  to deter further violations of Rule 9011.[8]

4       C.   Reasonableness of sanction awarded

5       Finally, Smyth argues that the sanction awarded was too harsh,

6  because it was based on purely legal errors in an area of law that

7  is complex.[9]

8       The court has wide discretion in determining what sanction to

9  impose for the filing of a complaint that violates Rule 9011.  In re

10 Giordano, 212 B.R. 617, 622 (9th Cir. BAP 1997), aff'd in part,

11 rev'd in part on other grounds, 202 F.3d 277 (9th Cir. 1999)(table).

12 Smyth does not explain why the sanctions imposed are too harsh,

13 other than to argue that the preclusion and one action rule issues

14 in this case are complex.

15      The bankruptcy court concluded, and we agree, that the lack of

16 legal support for the claims asserted in the adversary complaint

17 should have been obvious to a competent attorney.   The court further

18 concluded, after reviewing the impact of prior sanctions on Smyth's

19

20          [7](...continued)
       what effect it had on the litigation process in time or
21     expense; whether the responsible person is trained in the law;
       what amount, given the financial resources of the responsible
22     person, is needed to deter similar activity by other litigants:
       all of these may in a particular case be proper considerations.
23
    Advisory Committee Notes to Rule 11, Subdiv. (b) and (c).
24
       [8]    Smyth does not argue that the court failed to consider
25  other factors, such as his ability to pay.

26     [9]    He does not argue that the fees are unreasonable, if
    sanctions were warranted in this case.

                                    23

conduct, that a compensatory sanction (in conjunction with the suspension discussed below) was appropriate. Smyth has not demonstrated that the bankruptcy court abused its discretion in imposing the sanction that it did.

CONCLUSION

All of the claims Smyth alleged in the adversary complaint were barred by claim preclusion, a proposition that should have been obvious to a competent attorney. The bankruptcy court did not abuse its discretion in awarding monetary sanctions. Therefore, we AFFIRM in BAP No. NC-04-1452.

BAP NO. NC-04-1453

In this appeal, Smyth seeks review of the bankruptcy court's order that suspended him from practice before the bankruptcy courts of the Northern District of California for six months.

DISCUSSION

Smyth makes numerous arguments, which can be divided into three categories.[10]

---

[10] After oral argument, counsel for Smyth filed with the panel a letter addressing three questions that we had asked at argument. We did not ask for further briefing of this appeal, and counsel did not seek permission to file a post-argument brief. Nonetheless, we have reviewed the letter and the legal arguments it contains, and conclude that it does not add anything to the arguments made in the brief or at oral argument.

24

1. _Procedural_

Smyth argues that the court erred by failing to refer this matter to the Standing Committee on Professional Conduct, which he claims is required by the local court rules. Although he is correct that a court must follow its own rules, see _Standing Comm. on Discipline of the U.S. Dist. Court v. Yagman_, 55 F.3d 1430, 1435 n.8 (9th Cir. 1995), he has not demonstrated that the rules on which he relies apply or, if they do, that they require reference to the Standing Committee.

Local Bankruptcy Rule 1001-2(a)(32) and (33) provide that Civil Local Rules 11-6 and 11-7 apply in all bankruptcy cases. The Northern District of California's Civil Local Rule 11-6, labeled "Discipline," provides, as relevant:

> (a) General. In the event that a Judge has cause to believe that an attorney has engaged in unprofessional conduct, the Judge may do any or all of the following:
>
> (1) Initiate proceedings for civil or criminal contempt . . . ;
>
> (2) Impose other appropriate sanctions;
>
> (3) Refer the matter to the appropriate disciplinary authority of the state or jurisdiction in which the attorney is licensed to practice;
>
> (4) Refer the matter to the Court's Standing Committee on Professional Conduct; or
>
> (5) Refer the matter to the Chief Judge for her or him to consider whether to issue an order to show cause under Civ. L.R. 11-7.

Here, the court imposed sanctions for violation of Rule 9011, not for "unprofessional conduct," which is covered by the local rules. Smyth does not point to any authority requiring application

25

of the local rule to Rule 9011 sanctions.

Even assuming that the rule does apply to the imposition of sanctions under Rule 9011, the rule is discretionary. It provides that the judge "may" act, not that the judge must act. Further, if the judge does act, the rule does not mandate that disciplinary proceedings be conducted by the court's Standing Committee on Professional Conduct. The rule gives the judge five options for dealing with counsel's unprofessional conduct, only one of which is referral to the Standing Committee. Assuming that this rule applies, the bankruptcy court chose to "impose other appropriate sanctions," which is specifically authorized by the rule. See Northern District of California's Civil Local Rule 11-6(a)(2).

Smyth argues that, because suspension is considered discipline under Civil Local Rule 11-7(c)(3), the court was required to refer the matter to the Standing Committee. Civil Local Rule 11-7(c) describes the procedure the Standing Committee must follow when it receives a referral from a judge that an attorney admitted to practice before the court has engaged in unprofessional conduct. Subsection (3) sets out the procedure for determining what action the committee will take. Nothing in the rule requires that alleged violations of Rule 9011 be referred to the Standing Committee.[11]

----

[11] Smyth argues that the Ninth Circuit requires that disciplinary matters be heard by the Standing Committee, citing Standing Comm. on Discipline of the U.S. Dist. Court v. Yagman, 55 F.3d 1430, 1435 n.8 (9th Cir. 1995). The case says nothing of the sort. It merely explains that a local rule of the Central District allows attorney misconduct to be referred to the Standing Committee. Id. at 1435. The case does not even address the local rule on which
(continued...)

26

2.   Findings

Smyth argues that suspension is a quasi-criminal sanction, and therefore the court was required, but erroneously failed to make a finding of bad faith before suspending him. Smyth is wrong.

Sanctions may be imposed under various authority including, among others, Rule 9011 and the court's inherent power. See Chambers v. NASCO, Inc., 501 U.S. 32 (1991)(discussing different bases for imposing sanctions on attorneys). Where a court imposes a sanction under its inherent power, it must make a finding of bad faith. E.g., In re Dyer, 322 F.3d 1178, 1196 (9th Cir. 2003); In re Fjeldsted, 293 B.R. 12, 26 (9th Cir. BAP 2003). Where, however, it imposes sanctions under Rule 9011, or its counterpart Fed. R. Civ. P. 11, no finding of bad faith is required; the rule sets out an objective standard for an attorney's conduct. Chambers, 501 U.S. at 47; In re Grantham Bros., 922 F.2d 1438, 1441 (9th Cir. 1991).

There is no doubt that suspension of an attorney from the practice of law is a serious sanction. It is, however, a sanction that is available for violations of Rule 9011, which does not require a finding that the attorney acted in bad faith. See, e.g., Weissman v. Quail Lodge, Inc., 179 F.3d 1194, 1197 (9th Cir. 1999) (noting that temporary suspension of counsel is a permissible sanction); American Bar Assoc., Standards and Guidelines for

---

[11](...continued)
Smyth relies here, which is a rule of the Northern District. Further, footnote 8, on which Smyth relies, deals with discovery in a matter that had been referred to the Standing Committee, not with whether referral to the committee is required in the first place.

27

1  Practice under Rule 11 of the Federal Rules of Civil Procedure, 121

2  F.R.D. 101, 124 (1988).

3       In Fjeldsted, we said:

4       Rule 9011(c)(2) provides that the court may impose a "penalty"
         that is "limited to what is sufficient to deter repetition of
5        such conduct or comparable conduct by others similarly
         situated." Fed. R. Bankr. P. 9011(c)(2). Civil in nature, the
6        Rule 9011(c)(2) penalty parallels civil contempt and inherent
         sanctions. It also has the same dual aspects of (1) due
7        process and (2) the imposition of a sanction amount appropriate
         to the purpose. We hold, therefore, that under Rule 9011(c)(2)
8        a court may not impose a deterrence penalty that is a "serious
         penalty" in the nature of criminal contempt; only an amount
9        necessary to deter the misconduct may be awarded.

10  293 B.R. at 28 (footnote omitted). The difference between civil and

11  criminal sanctions is that "[c]ivil penalties must either be

12  compensatory or designed to coerce compliance." Dyer, 322 F.3d at

13  1192. Where, however, the sanction is designed to coerce

14  compliance, or in the terms of Rule 9011, "to deter repetition of

15  such conduct," the sanction is civil.

16       As we will discuss in more detail below, the bankruptcy court

17  determined that a temporary suspension from the practice of law

18  before the bankruptcy courts for the district was required to deter

19  repetition of Smyth's conduct. Thus, the sanction was designed to

20  obtain compliance, not to punish, and was authorized under Rule

21  9011.

22       Smyth also argues that the two legal arguments he made in

23  support of debtor's objection to the city's proof of claim were not

24  frivolous, and therefore not sanctionable.

25       The court first found that there was no support for the

26  contention that, because debtor's confirmed chapter 13 plan did not

28

specifically refer to the city's claim as secured, it could not be paid as a secured claim. Specifically, the objection says:

> (1) The City of Oakland's claim is secured.[12] The debtor's confirmed Chapter 13 Plan does not provide for the payment of any secured claims. Accordingly, this claim cannot be paid as secured. <u>In re Avery</u>, 272 Bankr. 718, 724 (Ftnt) (Bk. E.D. CA 2002).

Debtor's Objection to Claim No. 1 Filed by the City of Oakland. Debtor's confirmed chapter 13 plan provided that debtor would "pay off all debts to the City of Oakland by 4/1/04, through sale or refinance of his real property." Order Confirming Plan.

The bankruptcy court did not abuse its discretion in rejecting Smyth's legal argument and concluding that it was frivolous:

> However, there is no requirement that a plan specifically refer to a claim as secured for the claim to be paid through the plan as a secured claim. Only two things are required. The creditor must file a timely proof of claim asserting secured status, and the plan must provide for its payment. <u>See</u> 11 U.S.C. § 1327(c). Here, both requirements were satisfied.

Memorandum of Decision re Order to Show Cause re Rule 9011 Sanctions at 6:14-19. That reasoning is correct.[13]

---

[12]    This statement is indicative of the shifting positions Smyth took throughout this dispute with the city. He argued in connection with the conversion of the bankruptcy case to chapter 7 that the city's claim was not secured, having been extinguished by confirmation of the plan.

[13]    Smyth complains that the court's citation of § 1327(c) must be a mis-cite, as it does not support the proposition for which it is cited. From this, he contends that the court's finding that his argument is frivolous is erroneous.

The citation appears to be a typographical error. Section 1327(c) deals with the effect of confirmation on property that revests in the debtor. Presumably, the court intended to cite
(continued...)

29

The authority Smyth cites does not undermine the bankruptcy court's reasoning. In <u>Avery</u>, which he cited in the objection to the claim as well as on appeal, the court noted that a claim must be filed before it may be paid through a confirmed chapter 13 plan, and that, if a "plan fails to provide for a secured or priority claim, the claim will not be paid even if the creditor files a proof of claim." 272 B.R. at 724 n.5. Here, the plan did provide for payment of the city's claim, albeit without referring to the claim as secured. The fact that the plan does not refer to the claim as secured does not prevent payment as provided in the plan.

On appeal, Smyth also cites <u>In re Fiore</u>, 290 B.R. 138 (Bankr. E.D. Mo. 2003). In that case, a creditor properly filed a proof of claim asserting priority status. The debtor's confirmed chapter 13 plan provided for payment of specific priority claims, which did not include this creditor. The court held that the claim could not be paid as a priority claim, because it was not listed among the priority claims to be paid. Nor would it be paid as a general unsecured claim, because it was in fact a priority claim. The court concluded, therefore, that the claim was not provided for in the plan and would survive the discharge.

That is not the situation here. Debtor's plan specifically provided for payment of the city's claim, without designating it as secured or unsecured. Therefore, when the city filed its secured

[13](...continued)
§ 1326(c), which provides that, "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."

30

Case: 03-04837   Doc# 43   Filed: 07/08/05   Entered: 07/19/05 14:17:02   Page 30 of 39

1   claim, that claim could be paid in accordance with the plan. In
2   other words, it was to be paid through the sale or refinance of
3   debtor's property. There is no legal authority to support Smyth's
4   contention that the claim could not be paid through the confirmed
5   plan.

6       The bankruptcy court also did not err in concluding that
7   Smyth's second objection to the city's claim was frivolous. Smyth
8   argued that the city could not be paid as unsecured, because it had
9   not filed an unsecured claim. We agree with and adopt the
10  bankruptcy court's reasoning:

11          Smyth's second contention is even more clearly frivolous.
        In the Claim Objection, Smyth cited a case purportedly in
12      support of his contention: In re Avery, 272 B.R. 718 (Bankr.
        E.D. Cal. 2002). However, the only relevant statement made in
13      that case is that a creditor may not be paid through a chapter
        13 plan unless it files a proof of claim. Avery, 272 B.R. at
14      723, n.5. In papers filed in connection with the order to show
        cause, Smyth admitted that he had no authority for his second
15      contention.

16          While an attorney may not be sanctioned for making a
        creative argument, the argument must be plausible. Smyth's
17      contention is ridiculous. A creditor must be able to rely on a
        proof a claim asserting secured status to preserve its
18      underlying monetary claim in the event its security interest is
        avoided. Otherwise, it would have to file multiple claims or
19      plead in the alternative in every case on the chance that a
        debtor might challenge its lien.
20

21  Memorandum of Decision at 8:6-20. A claim asserting secured status
22  may be objected to on the basis that it is in fact unsecured, and
23  the court may sustain the objection and allow the claim as an
24  unsecured claim.

25      Smyth's entire argument for why this contention was not
26  frivolous is:

31

> If for any reason a secured creditor wants to be <u>paid as unsecured</u>, he must file an (amended) unsecured claim. See <u>In re Padgett</u>, 119 B.R. 793, 795 and <u>In re Delmonte</u>, 237 B.R. [132[14]].

Appellant's Brief at 22 (emphasis in original). Those cases do not support his argument.

In <u>In re Padget</u>, 119 B.R. 793 (Bankr. D. Colo. 1990), the creditor had filed a secured claim in the debtor's chapter 7 case. The trustee issued his final report, showing that he was treating the claim as secured, and proposed paying dividends to unsecured creditors. After the final report was approved and the dividends issued, the creditor sought reconsideration, arguing that it should be treated as an unsecured creditor and therefore share in the distribution, because its collateral had turned out to be worthless.

Not surprisingly, the trustee opposed such treatment, and the court agreed. Because a proof of claim must be filed for a creditor to receive a distribution in a chapter 7 case, Rule 3002, and filed claims are deemed allowed unless objected to, § 502(a), the creditor's claim was deemed allowed as secured. It could not change the status of its claim after allowance, unless it filed a timely amendment or supplemental claim. The creditor had not done that, despite having had more than one year during which it could have done so. Therefore, the court held that the trustee was not required to pay the creditor as unsecured.

In this case, Smyth filed an objection to the city's claim, arguing that it was not secured. Thus, the claim was not deemed

---

[14]    Smyth's citation to this case was incorrect in the brief.

32

allowed. Had he prevailed on the objection, the claim could have been allowed as an unsecured claim, or the city would have had an opportunity to file an amended claim asserting unsecured status. The objection that the claim was not properly categorized as secured did not preclude the court from allowing it as unsecured (if the objection had been well-taken) or from allowing the city to file an amended claim. Padget is not on point.

Even less on point is In re Delmonte, 237 B.R. 132 (Bankr. E.D. Tex. 1999). In that case, the creditor filed a proof of claim for a secured debt. The debtor's confirmed chapter 13 plan provided that the creditor would have relief from the automatic stay to pursue its collateral, and that any unsecured portion of the creditor's debt would be treated the same as other unsecured claims. After the creditor repossessed and sold its collateral, it filed an amended proof of claim, reducing the amount to reflect the deficiency and changing the claim from secured to unsecured.

The court held that the amended proof of claim qualified as an amended claim that was timely filed, and that the plan provided for payment of the claim as unsecured.

Again, this case is not pertinent to the factual situation presented here. The fact that a creditor may need to file an amended proof of claim to assert the deficiency after sale of the collateral does not mean that a debtor's objection to a proof of claim as secured automatically eliminates any possible unsecured claim the creditor may have.

The bankruptcy court did not abuse its discretion in concluding

33

1   that Smyth's arguments on the objection to the city's claim violated

2   Rule 9011.

3        Smyth also argues that his "back-up" argument, that the

4   confirmed plan extinguished the city's lien, was not frivolous and

5   that, even if it were, sanctions could not be awarded because his

6   other arguments were not frivolous.

7        We have already explained that the two original legal arguments

8   Smyth made in support of his objection to the claim were frivolous,

9   and therefore the court was justified in imposing sanctions.

10  Accordingly, we need not consider whether the "back-up" argument was

11  frivolous.  We note, however, that we rejected Smyth's "back-up"

12  argument in an earlier appeal, BAP No. NC-04-1257-PMaS, decided on

13  December 13, 2004.

14  3.  Sanction

15       Finally, Smyth makes two arguments about the sanction imposed.

16  First, he asserts that the court committed reversible error in

17  basing his sanction even in part on charges of prior misconduct,

18  citing Christian v. Mattel, Inc., 286 F.3d 1118 (9th Cir. 2002).  As

19  with the monetary sanction awarded in the adversary proceeding and

20  reviewed in related BAP No. NC-04-1452, the bankruptcy court

21  considered Smyth's prior conduct in other cases in determining the

22  least severe sanction that it could impose that would accomplish the

23  purpose of deterrence.  Memorandum of Decision re Order to Show

24  Cause re Rule 9011 Sanctions at 9:7-12.  As we explained in the

25  discussion of the related appeal, the bankruptcy court did not abuse

26  its discretion in considering the prior conduct in determining the

34

appropriate sanction, because such consideration was necessary to determine what sanction would accomplish the purpose of deterrence.

Second, and in a similar vein, Smyth argues that the six-month suspension is too harsh a penalty, even if the objection lacked any legal merit, because his errors were legal rather than factual, and had at least a "scintilla" of support. The arguments Smyth made with regard to the objection to claim had no more support than did his arguments that were sanctioned in the adversary proceeding. As we explained in the related appeal from the adversary proceeding sanctions order, Rule 9011 provides for sanctions for ungrounded legal contentions, and sanctions may be imposed for frivolous arguments even if some other arguments are not frivolous.

Neither of the arguments Smyth made in connection with the objection to the city's claim was supported by the law. Therefore, the court was justified in imposing sanctions.

With regard to the severity of the sanction, there is no question that a six-month suspension from practice before the district's bankruptcy courts is a serious sanction. However, the question a court must answer in deciding what sanction to impose is what is the least severe sanction that will likely accomplish the purpose of deterrence. See Rule 9011(c)(2)(sanction to be "limited to what is sufficient to deter repetition of such conduct . . ."). Smyth does not argue that a lesser sanction would have a deterrent effect. His arguments in this appeal in fact reflect that he still does not accept that his arguments were completely without support. Smyth has not demonstrated that a lesser sanction would have

35

accomplished the purpose of deterrence.   In view of the court's
careful consideration of the inefficacy of prior sanctions in
changing Smyth's performance, we cannot find an abuse of discretion
in choosing the sanction that it did.

CONCLUSION

The bankruptcy court did not abuse its discretion in finding
that Smyth had violated Rule 9011 in filing the objection to the
city's claim, or in imposing a sanction of a six-month suspension
from practice before the bankruptcy courts of the district.
Therefore, we AFFIRM in BAP No. NC-04-1453.

U.S. Bankruptcy Appellate Panel
of the Ninth Circuit
125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California  (626) 229-7220
Appeals from all other Districts (626) 229-7225

NOTICE OF ENTRY OF JUDGMENT

BAP No. NC-04-1452-PBS

RE:  RALBERT RALLINGTON BROOKS-HAMILTON

A separate Judgment was entered in this case on _____7/8/05_____.

BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the
Clerk of the Bankruptcy Court.  Cost bills should be filed with the Clerk
of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1

ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of
the Bankruptcy Court from which the appeal was taken, will be issued
7 days after the expiration of the time for filing a petition for
rehearing unless such a petition is filed or the time is shortened or
enlarged by order.  See Federal Rule of Appellate Procedure 41.

APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by
filing a notice of appeal with the Clerk of this Panel.  The Notice
of Appeal should be accompanied by payment of the $255 filing fee
(effective November 1, 2003) and a copy of the order or decision on
appeal. Checks may be made payable to the U.S. Court of Appeals for
the Ninth Circuit.  See Federal Rules of Appellate Procedure 6 and the
corresponding Rules of the United States Court of Appeals for the Ninth
Circuit for specific time requirements.

U.S. Bankruptcy Appellate Panel
of the Ninth Circuit
125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California  (626) 229-7220
Appeals from all other Districts (626) 229-7225


NOTICE OF ENTRY OF JUDGMENT


BAP No. NC-04-1453-PBS

RE:  RALBERT RALLINGTON BROOKS-HAMILTON


A separate Judgment was entered in this case on _____7/8/05_____.


BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the
Clerk of the Bankruptcy Court.  Cost bills should be filed with the Clerk
of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1


ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of
the Bankruptcy Court from which the appeal was taken, will be issued
7 days after the expiration of the time for filing a petition for
rehearing unless such a petition is filed or the time is shortened or
enlarged by order.  See Federal Rule of Appellate Procedure 41.


APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by
filing a notice of appeal with the Clerk of this Panel.  The Notice
of Appeal should be accompanied by payment of the $255 filing fee
(effective November 1, 2003) and a copy of the order or decision on
appeal. Checks may be made payable to the U.S. Court of Appeals for
the Ninth Circuit.  See Federal Rules of Appellate Procedure 6 and the
corresponding Rules of the United States Court of Appeals for the Ninth
Circuit for specific time requirements.

```
                    CERTIFICATE OF MAILING
          ----------------------------------
        The undersigned, deputy clerk of the U.S. Bankruptcy
    Appellate Panel of the Ninth Circuit, hereby certifies that a copy
    of the document on which this certificate appears was mailed this date
    to all parties of record to this appeal.

                         By: Edwina Clay

                         Deputy Clerk: July 8, 2005
```